IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

THE HOSPITAL AUTHORITY OF )
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON )
COUNTY, TENNESSEE, d/b/a/ )
NASHVILLE GENERAL HOSPITAL, )
)
v. ) No. 3:15-1100
)
MOMENTA PHARMACEUTICALS, )
INC. and SANDOZ, INC. )

# M E M O R A N D U M   A N D   O R D E R

Presently pending is Plaintiff's motion for leave to file an amended complaint. *See*

Docket Entry No. ("DE") 140. For the reasons that follow, Plaintiff's motion is GRANTED.[1]

## I. PROCEDURAL BACKGROUND[2]

Plaintiff Nashville General Hospital ("Plaintiff" or "NGH") filed its initial complaint on

October 14, 2015. *See* DE 1. The complaint involved four separate counts against Defendants

---

[1] Although the Sixth Circuit has not addressed whether a motion to amend is a dispositive or non-dispositive motion, most of the district courts in the Sixth Circuit, including this court, consider an order on a motion to amend to be non-dispositive. *See, e.g., Gentry v. The Tennessee Board of Judicial Conduct*, 2017 WL 2362494, at *1 (M.D. Tenn. May 31, 2017) ("Courts have uniformly held that motions to amend complaints are non-dispositive matters that may be determined by the magistrate judge and reviewed under the clearly erroneous or contrary to law standard of review …") (citations omitted); *Chinn v. Jenkins*, 2017 WL 1177610 (S.D. Ohio March 31, 2017) (order denying motion to amend is not dispositive); *Young v. Jackson*, 2014 WL 4272768, at *1 (E.D. Mich. Aug. 29, 2014) ("A denial of a motion to amend is a non-dispositive order."); *Hira v. New York Life Insurance Co.*, at **1-2, 2014 WL 2177799 (E.D. Tenn. May 23, 2014) (magistrate judge's order on motion to amend was appropriate and within his authority because motion to amend is non-dispositive); *United States v. Hunter*, 2013 WL 5280251, at *1 (S.D. Ohio Oct. 29, 2013) (stating that a magistrate judge's orders denying petitioner's motions to amend a petition pursuant to 28 U.S.C. § 2855 were non-dispositive).

[2] The factual background involved in this matter is discussed in detail in the undersigned's previous Report and Recommendation (DE 114) and the subsequent memorandum of the Chief District Judge (DE 134). This memorandum and order therefore discusses only those facts necessary to address the pending motion.

Momenta Pharmaceuticals, Inc. ("Momenta") and Sandoz, Inc. ("Sandoz") (collectively referred to as "Defendants") under the Sherman Act, which included allegations of implementation of unreasonable restraints on trade, monopolization, a conspiracy to monopolize, and attempts to monopolize. DE 1 at ¶¶ 81-104. The alleged Sherman Act violations centered on the role of Momenta and Sandoz in producing and distributing enoxaparin, a generic version of the drug Lovenox®. *Id.* at ¶¶ 11-13, 19, 26. The complaint was filed on behalf of both Plaintiff and a nationwide class of persons and entities, pursuant to Fed. R. Civ. P. 23(a) and (b), that purchased enoxaparin from Defendants or non-party Sanofi-Aventis ("Aventis"), who brought Lovenox® to market in the United States, beginning on September 21, 2011. *Id*. at ¶¶ 20, 75.

In response to the initial complaint, Defendants jointly filed a motion to transfer the case to the District of Massachusetts (DE 58) and a motion to dismiss (DE 65), and Momenta additionally filed a separate motion to dismiss or transfer for improper venue. DE 62. On September 29, 2016, a Report and Recommendation was entered in which the undersigned Magistrate Judge recommended that each motion be denied. DE 114. Defendants subsequently filed both joint and separate objections to the Report and Recommendation. DE 117, 119. On March 21, 2017, the District Judge issued a Memorandum Opinion that adopted in part and declined to adopt in part the Report and Recommendation. DE 134. As a result of the District Judge's holding, Plaintiff's claims for declaratory and injunctive relief were permitted to proceed but Plaintiff's claim for damages was dismissed. *Id*. at 16. This was based on a finding that Plaintiff did not have standing to seek damages under the so-called "indirect purchaser rule," derived from the Supreme Court's holding in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977), which bars recovery of antitrust damages from Defendants

based on Plaintiff's purchase of enoxaparin from a non-party drug wholesaler, McKesson Corporation ("McKesson"), and not directly from Defendants. *Id.* at 8-14. Plaintiff filed the instant motion for leave to amend thereafter. DE 140.

## II. ANALYSIS

Plaintiff states that its proposed amended complaint makes three fundamental changes: (1) the addition of a new representative plaintiff identified as the American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan ("DC 37"); (2) the amendment of the claims in the initial complaint to include claims filed under various state antitrust and consumer protection laws that permit indirect purchaser standing; and (3) the addition of substantive allegations pertaining to Defendants' conspiratorial conduct. DE 141 at 5.[3] The amended complaint asserts claims for damages under the statutes of 30 different states and the District of Columbia, referred to as the "Indirect Purchaser Jurisdictions,"[4] that allow indirect purchasers such as NGH, DC 37, and the proposed class of plaintiffs to recover damages, thus circumventing the federal bar of such claims. *Id.* Plaintiff asserts that the class it now seeks to represent is comprised of "those end-payers who could bring an indirect claim under their own state's [repealer] laws." *Id.*

---

[3] Plaintiff filed a motion to file the amended complaint under seal, which was denied. *See* DE 152.

[4] Plaintiff identifies these 31 jurisdictions as the following: Alabama, Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. DE 141 at 8, n.5.

## A. Legal Standard

Rule 15 of the Federal Rules of Civil Procedure, which governs the Court's consideration of the pending motion, states that leave to amend a pleading should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). The reason behind such policy is "to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir. 1982)). However, the Supreme Court has indicated that while the moving party "ought to be afforded an opportunity to test [its] claim on the merits," one or more of the following conditions may negate this directive: undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the proposed amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). Nevertheless, the determination as to whether justice requires permission to amend the pleading is within the district court's "sound discretion." *Moore*, 790 F.2d at 559 (internal citations omitted).

Rule 20 is also implicated by Plaintiff's motion and states that additional plaintiffs may be joined to a pending action if such plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A), (B). Such permissive joinder of claims is encouraged as "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties ...." *Thompson v. Janssen Pharm., Inc.*, No. 15-cv-2558, 2015 WL

12844456, at *1 (W.D. Tenn. Dec. 21, 2015) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

**B.  Defendants' Opposition**

The crux of Defendants' opposition focuses on the alleged futility of Plaintiff's proposed amendments. The Sixth Circuit has made clear that any analysis of the futility of proposed amendments is equivalent to the analysis undertaken as part of a Rule 12(b)(6) motion. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) ("[A] proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss."). The policy behind the futility argument is to prevent the expenditure of unnecessary effort and resources by both the parties and the court. *See, e.g., Matlock v. Rose*, 731 F.2d 1236, 1240-41 (6th Cir. 1984) ("[T]he concern for judicial economy, under the circumstances of this case, is particularly advanced through the futility doctrine."). However, judicial economy is only served in this case if the undersigned concludes, and the District Judge concurs, that denial of Plaintiff's motion to amend is required, since, as made clear in their responsive brief, Defendants plan to file a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the current motion is granted. *See* DE 148 at 9, n.1. While the Court does not in any way view Defendants' candid statements regarding their planned course of litigation as deliberately coercive, this posture inevitably effectuates such an end.

Other courts in this circuit have commented on the inelegant nature of the futility argument in such a context:

> There is some conceptual difficulty presented when the primary basis for a party's opposition to the filing of an amended pleading is that the pleading is futile, *i.e.* that it fails to state a claim upon which relief can be granted. A Magistrate Judge cannot ordinarily rule on a motion to dismiss, *see* 28 U.S.C. § 636(b)(1)(A), and denying a motion for leave to amend on grounds that the proposed new claim is

> legally insufficient is, at least indirectly, a ruling on the merits of that claim .... Consequently, rather than determining the actual legal sufficiency of the new claim, in many cases it will suffice to determine if there is a substantial argument to be made on that question and, if so, to allow the amended pleading to be filed with the understanding that a motion to dismiss for failure to state a claim may follow.

*Durthaler v. Accounts Receivable Mgmt., Inc.*, No. 2:10-cv-1068, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011). *See also Vanburen v. Ohio Dep't of Pub. Safety*, No. 2:11-cv-1118, 2012 WL 5467526, at *4 (S.D. Ohio Nov. 9, 2012) (holding that due to this "procedural roadblock," the better course would be to allow amendment of the complaint with the understanding that a motion to dismiss may follow filing of the amended complaint); *Research Inst. at Nationwide Children's Hosp. v. Trellis Bioscience, LLC*, No. 2:15-cv-3032, 2017 WL 1487596, at *3 (S.D. Ohio Apr. 26, 2017) (same). Indeed, "it is usually a sound exercise of discretion to permit the claim to be pleaded and to allow the merits of the claim to be tested before the District Judge by way of a motion to dismiss." *Durthaler*, 2011 WL 5008552, at *4. *See also Greenwald v. Holstein*, No. 2:15-cv-2451, 2016 WL 9344297, at *5 (S.D. Ohio Feb. 3, 2016) (same).[5] With such guidance in mind, the Court turns to the merits of Defendants' opposition to the motion.

**(1) Personal Jurisdiction**

Defendants contend that the addition of DC 37 as a plaintiff to the instant lawsuit would be futile because the Court lacks personal jurisdiction with respect to any claims that could be asserted by DC 37. DE 148 at 9. DC 37 is described as a "health and welfare benefit plan located in New York covering New York public sector employees, retirees, and their families wherever

---

[5] This approach is also the most conceptually and intellectually consistent with the view that motions to amend are non-dispositive proceedings.

they reside, and is New York's largest public employee union." DE 141 at 7. Defendants emphasize, however, that the proposed amended complaint contains no allegation that DC 37 purchased enoxaparin in Tennessee, reimbursed its union members for enoxaparin in Tennessee, or was otherwise injured in Tennessee. DE 148 at 19. Defendants also rely on the recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, in which the Supreme Court reaffirmed that "there must be an affiliation between the forum and the underlying controversy, principally" for a court to exercise specific personal jurisdiction over a defendant.[6] 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 918, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)) (internal quotations omitted).

Plaintiff responds that DC 37's claims are appropriately before this Court based on the doctrine of pendent personal jurisdiction, which holds that "where a federal statute authorizes nationwide service of process, and the federal and state claims 'derive from a common nucleus of operative fact' ... the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available." *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 796, 805 (N.D. Ohio 1998) (quoting *Gibbs,* 383 U.S. at 725, 86 S. Ct. 1130). The Court has previously determined that Section 12 of the Clayton Act, the antitrust statute at issue in the instant matter, provides for

---

[6] Plaintiff does not assert that DC 37 is subject to general personal jurisdiction in the instant matter, as such an exercise involves a court's ability "to hear any and all claims against [foreign (sister-state or foreign-country) corporations] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.'" *Goodyear*, 564 U.S. at 919, 131 S. Ct. 2846 (internal citation omitted).

nationwide personal jurisdiction in the case of corporate defendants such as Sandoz and Momenta. *See* DE 114 at 38-39; DE 134 at 6. The issue, therefore, is whether the Court may exercise pendent personal jurisdiction with respect to the state law claims brought under the 31 "Indirect Purchaser Jurisdictions" named in the proposed amended complaint.[7]

In providing jurisdiction over a cause of action involving enforcement of a federal right, "Congress granted the district courts power also to consider state law claims provided they had a nucleus of pertinent facts in common with a substantial federal claim." *Iron Workers*, 23 F. Supp. 2d at 805 (quoting *Hargrave v. Oki Nursery, Inc.,* 646 F.2d 716, 719 (2nd Cir. 1980)). Here, despite Defendants' correct observation that the Fifth Amendment limits a court's ability to exercise jurisdiction over a non-resident defendant (DE 148 at 18), the Court takes its cue from the *Iron Workers* decision in finding that such a "nucleus of pertinent facts in common" with the pending federal claim exists in this matter:

> The Supreme Court has yet to address the scope of due process protection under the Fifth Amendment in the jurisdictional context. Since the Sixth Circuit also has yet to address this precise issue, the Court will follow the view that Fifth Amendment due process is satisfied when the defendant in question resides in the United States and a statute provides for nationwide service of process .... Because this Court has personal jurisdiction over the defendants under the [] antitrust claims, and because the state law claims alleging a conspiracy to sell and market

---

[7] Counsel for Defendants suggested during oral arguments that pendent personal jurisdiction should not apply in the instant case because neither the Supreme Court nor the Sixth Circuit has formally adopted the use of such jurisdiction. This contention is unpersuasive in light of the use of pendent personal jurisdictions in numerous other courts in this circuit, as well as recognition of this principle by the Sixth Circuit. *See, e.g.*, *Beautytuft, Inc. v. Factory Ins. Ass'n*, 431 F.2d 1122, 1128 (6th Cir. 1970) (affirming the district court's exercise of pendent personal jurisdiction); *Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 668 (S.D. Ohio 2011) ("The Court has little difficulty applying this concept here."); *Bennett v. Steiner-Liff Iron & Metal Co.*, 714 F. Supp. 895, 897 (M.D. Tenn. 1989) (noting that pendent jurisdiction "is a matter for the discretion of the court").

tobacco derive from a common nucleus of operative facts with the federal claims, the Court need not reach the question of whether personal jurisdiction with respect to the state law claims is otherwise available .... Accordingly, the Court finds that it has jurisdiction over Defendants ... as to both the federal and state law claims contained in the Amended Complaint.

*Iron Workers*, 23 F. Supp. 2d at 805-06. There is at least a substantial argument to be made as to jurisdiction, and the Court therefore declines to find futility on this ground.

**(2) Statute of Limitations**

**(a) Accrual of cause of action**

Defendants additionally allege that the proposed amended complaint is futile because any potential claim asserted by DC 37 is barred by the relevant statute of limitations, which requires a plaintiff to file its antitrust action "within four years after the cause of action accrued." 15 U.S.C. § 15b.[8] Defendant states that any claims asserted by NGH or DC 37 and all proposed state law claims began accruing in January of 2012, when non-party Amphastar was permitted to begin selling enoxaparin, thus rendering time-barred any claims brought after February of 2016. DE 148 at 22-23.[9] Plaintiff responds by first arguing that such claims did not begin accruing in January of 2012 because Plaintiff alleges damages "through the present," and that even if such claims had begun accruing in January of 2012, the statute of limitations was tolled by both Defendants' fraudulent concealment of their actions and the discovery rule, the latter of which holds that "accrual occurs when the plaintiff discovers that he has been injured and who caused the injury." *Med. Ctr. at Elizabeth Place v. Premier Health Partners*, No. 3:12-cv-26, 2016 WL

_____

[8] Defendants also note that most of the state law claims proffered in the amended complaint are similarly subject to four-year statutes of limitation. DE 148 at 22-23, n.9.

[9] Amphastar's role in the current case is discussed in detail in previous opinions from both the undersigned and the Chief District Judge. *See* DE 114, 134.

9460026, at *14 (S.D. Ohio Oct. 6, 2016) (quoting *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006)) (internal quotations omitted).

In an antitrust lawsuit, the cause of action accrues and the accompanying limitation period commences "each time a defendant commits an act that injures the plaintiff's business." *In re Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 946-47 (E.D. Tenn. 2008) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971)). When a plaintiff alleges a continuing antitrust violation, the cause of action "accrues each time a plaintiff is injured by an act of the defendants." *Barnosky Oils, Inc. v. Union Oil Co. of California,* 665 F.2d 74, 81 (6th Cir. 1981). However, even in the event of an alleged continuing violation, "an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act." *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) (internal citation omitted). Such an overt act involves both "a new and independent act that is not merely a reaffirmation of a previous act" and that "inflict[s] new and accumulating injury on the plaintiff." *Southeastern Milk*, 555 F. Supp. 2d at 947 (internal citation omitted).

Here, Plaintiff alleges ongoing harm in light of the "supracompetitive prices resulting from Defendants' conspiracy." DE 153 at 13 (citing to DE 143 at ¶¶ 71, 74, 76, 79, and 83). The fact that Amphastar was finally permitted to begin selling generic enoxaparin in January of 2012 does not necessarily mean that the instant cause of action began accruing at that time. The proposed amended complaint alleges, among other things, that the wholesale price of generic enoxaparin did not begin to decline until May of 2012 and subsequently "began plummeting" in 2014, until which time Plaintiff claims to have paid "hundreds of millions of dollars in overcharges." DE 143 at ¶¶ 74-75. As noted by the Supreme Court:

> Antitrust law provides that, in the case of a "continuing violation," say, a price–fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, "each overt act that is part of the violation and that injures the plaintiff," *e.g.,* each sale to the plaintiff, "starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times."

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189, 117 S. Ct. 1984, 1990, 138 L. Ed. 2d 373 (1997) (internal citations omitted). Such a price-fixing conspiracy is alleged in the amended complaint, with overpayments occurring well past Amphastar's entry into the market in January of 2012. Indeed, Plaintiff seeks to represent specific individuals and entities that bought Lovenox® or generic enoxaparin "from September 21, 2011, *through the present* ...." DE 143 at ¶ 83 (emphasis added). The Court finds that there is substantial merit to Plaintiff's contention that the claims in the proposed amended complaint are timely, and such claims are therefore not futile for purposes of the pending motion to amend.

**(b) Fraudulent concealment**

With respect to alleged fraudulent concealment, Defendants argue that Plaintiff has failed to plead fraudulent concealment with the requisite level of particularity under Fed. R. Civ. P. 9(b).[10] To establish fraudulent concealment, a party must plead and prove: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts. *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). Although Plaintiff's allegations here of fraudulent

---

[10] This position was advanced by Defendants during oral arguments.

concealment are not extensive, the Court declines to hold that the possibility of fraudulent concealment is futile at this early stage of litigation. *See Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1043 (6th Cir. 1984) ("We are unprepared to hold, prior to any discovery on the issue, that Appellants can prove no set of facts consistent with these allegations sufficient to toll the statute of limitations. Appellants are entitled to have their cause tried on the merits if they can prove that the doctrine of fraudulent concealment should be applied to their case."). *Cf. Packaged Ice*, 723 F. Supp. 2d at 1018 ("[W]here there is a dispute as to the issue of fraudulent concealment, the question is one for the jury.") (quoting *Dry Cleaning & Laundry Institute of Detroit, Inc. v. Flom's Corp.,* 841 F. Supp. 212, 216 (E.D. Mich. 1993)).

In numbered paragraphs 2 and 3 of the amended complaint (DE 143), Plaintiff alleges that Defendants secretly manipulated the generic drug approval process to further their monopolization scheme. Plaintiff's allegations of secrecy and concealment by Defendants continue throughout at least numbered allegations 36 through 55. These same allegations also describe the fraudulent concealment as the failure of Momenta's experts to self-disclose conflicts of interest as required by the USP, the scientific organization that sets (among other things) drug standards enforced by the FDA. Further, it is entirely plausible that the only required due diligence in discovery of the facts of Defendants' conduct is reliance on the self-reporting rules of the USP, as alleged in Plaintiff's proposed modified numbered allegation 27 and new numbered allegation 71 (see DE 159).[11]  The Court finds that there is a substantial argument that

[11] An order directing that Plaintiff's notice of additional allegations (DE 159) be unsealed is entered separately.  *See also* DE 158 and DE 162.  The Court has considered Defendants' response to the supplemental allegations, and for the reasons herein, does not find that the arguments made by Defendants compel denial of the motion to amend.

the amended complaint (with the proposed additional allegations) plausibly, and therefore sufficiently, alleges affirmative acts of fraudulent concealment. For that reason, the Court declines to deny the motion to amend as futile.[12]

**(3) Standing**

Defendants argue that Plaintiff's proposal to represent a "nationwide class" under the laws of 31 different jurisdictions is futile because NGH and DC 37, who reside for purposes of this motion in Tennessee and New York, respectively, lack standing to assert claims on behalf of individuals from the other 29 jurisdictions. DE 148 at 23. Defendants rely on a case from the Eastern District of Michigan in which the court noted that to establish standing in a class action suit, the "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) ("*Packaged Ice II*") (quoting *Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174, 2183, 135 L. Ed. 2d 606 (1996)). The court ultimately held that the named plaintiffs in that case, which consisted of indirect purchasers that resided in California, Florida, Indiana, Michigan, and New York, lacked standing to assert claims pursuant to the laws of 26 additional states in which none of them resided or suffered the injury in question. *Id*. at 657-58.

---

[12] The Court further notes that the tolling argument based on fraudulent concealment may be academic to the extent that it is simply an alternative to Plaintiff's contention that the amended complaint is not untimely because of alleged ongoing antitrust violations, a contention with which the Court concurs as discussed herein.

Plaintiff does not dispute the *Packaged Ice II* holding, instead arguing that the Court's analysis should be guided by an earlier decision in which the Sixth Circuit held that once standing has been established with respect to a named plaintiff, the issue of "whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (internal citation omitted).[13] Plaintiff contends that Defendants confuse the issue of standing with the adequacy of class representation and argues that, in accordance with *Fallick*, the ability of NGH and DC 37 to seek relief on behalf of the unnamed class members residing in the remaining 29 state jurisdictions should be determined as part of the class certification process and not a motion to dismiss (or a motion to amend). DE 153 at 14-15.[14] The Court agrees.

Weighing in favor of Plaintiff's argument is a case from the Northern District of Ohio, in which the district court, applying *Fallick*, discussed standing and class certification as part of a motion to dismiss in a similar scenario involving indirect purchaser plaintiffs seeking relief under the consumer protection statutes of twenty different state jurisdictions:

> This Court would similarly confuse Article III standing and Federal Civil Rule 23's requirements if it would, at this stage, dismiss all state-law claims but those of the jurisdictions in which the named Indirect Purchaser Plaintiffs reside, or to which they are connected. Both the named Indirect Purchaser Plaintiffs and the absent members of the putative class identify the same general cause for their injuries: the alleged price-fixing and customer allocation conspiracy. The named

---

[13] Plaintiff also notes that the district court in *Packaged Ice II* failed to consider the *Fallick* decision in its opinion. DE 153 at 16.

[14] As discussed *supra*, the futility analysis is the equivalent of a Rule 12(b)(6) analysis. *See Rose*, 203 F.3d at 421 (6th Cir. 2000) ("[A] proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss.").

Indirect Purchaser Plaintiffs merely seek relief for themselves under the statutes of the jurisdictions in which they reside, and seek similar relief for absent class members under the antitrust and consumer protection statutes of each such class member's state. Properly understood, neither plaintiff grouping seeks relief for themselves under the laws of a foreign state jurisdiction. The [amended complaint] contains a mixture of state-law claims *only* because the Indirect Purchaser Plaintiffs bring this suit as a proposed class action.

*In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 806 (N.D. Ohio 2011) (emphasis in original). Similarly, the Court follows the *Fallick* decision in concluding that the current standing dispute, which has been raised by Defendants in response to a motion for leave to amend a complaint, would be more appropriately addressed following a ruling on class certification. *See In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, No. 1:14-MD-2508, 2015 WL 5166014, at *19 (E.D. Tenn. June 24, 2015) ("If the Court were to decide the standing issue at this juncture on the basis that the named plaintiffs do not reside in some of the states under whose laws they bring claims on behalf of the class, it would not be giving due appreciation to the complex nature of Article III standing in class actions and the nuances of class certification."); *see also In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 WL 2456612, at *11 (E.D. Mich. June 6, 2013) ("[T]he Court finds the better path is to defer this issue until the class certification stage."). The Court therefore rejects Defendants' futility arguments as to standing for purposes of this motion to amend.

**(4) The Purported Class**

Defendants assert that Plaintiff's attempt to "rewrite its class definition" to include indirect purchasers of enoxaparin from 31 different jurisdictions is both futile and unduly

prejudicial. DE 148 at 26-27.[15] Defendants argue that neither NGH nor DC 37 fit within their proposed class of plaintiffs because: (a) neither entity indirectly purchases enoxaparin "for their own use and not for resale" as described in the proposed class (DE 143 at ¶¶ 82-83), with NGH instead reselling enoxaparin through the NGH pharmacy and DC 37 reimbursing its members for their use of enoxaparin; and (b) the interests of the indirect purchasers, such as NGH, the end-payors, such as DC 37, and the actual consumers of enoxaparin all conflict, a scenario that Defendants contend "will plunge this case into chaos." DE 148 at 27-29.

Defendants' arguments again broach precisely the types of issues that are better suited for a class certification determination (or at the very least a Rule 12(b)(6) analysis). This point is perhaps best accentuated by the dearth of case law cited by Defendants involving a district court's denial of a motion to amend a complaint based on proposed changes to a class definition. The Court acknowledges that Defendants have cited one such decision from the Eastern District of New York, *Pierre v. JC Penney Co.*, in which a motion to amend was denied, to support their argument that futility has served as a basis for courts to deny motions seeking leave to amend a complaint to include a redefined class of proposed plaintiffs. DE 148 at 27. The facts in that case,

---

[15] Defendants also argue (*see* DE 163) that Plaintiff is definitionally excluded from its own proposed new class (*see* DE 159) because the class excludes persons who transacted in generic enoxaparin or Lovenox® for purposes of resale, and the motion to amend must therefore be denied as futile. First, the Court agrees with Plaintiff that there is a reasonable construction of this class definition (*see* DE 166); namely, that Plaintiff is not excluded from the class, but can only claim damages for transactions where Plaintiff dispenses to patients at its own cost, which was previously alleged by Plaintiff (*see* DE 143 at ¶ 11). The Court further concurs that this is a semantics issue at best; nevertheless, to address Defendants' strained interpretation of the class definition, the Court will permit insertion of the word "only" in Plaintiff's class exclusion, as proposed by Plaintiff. *See* DE 166 at 2, n.1. Finally, for all of the reasons stated herein, the Court finds that Defendants' arguments about the propriety of the class do not compel a finding of futility for purposes of a motion to amend.

however, are distinguishable from the instant matter, including the significant difference that the district court had already allowed the plaintiffs in *Pierre* to amend their complaint on two occasions. *Pierre*, No. 03-4782, 2006 WL 407553, at *1 (E.D.N.Y. Feb. 21, 2006).[16] The court ultimately held that the third amended complaint proposed by the *Pierre* plaintiffs, which sought to add new causes of action, utterly failed to state an actionable claim under 42 U.S.C. § 1981, thus rendering the proposed amendments futile. *Id.* at *4. Even then, the court denied the motion without prejudice to allow the plaintiff an opportunity to seek amendment of the proposed class. *Id.* at *6-7. This is far from analogous to the facts at issue here.

Defendants claim that the proposed amended complaint's class definition fails to cover Plaintiff because it seeks to encompass all individuals and entities residing in the United States that indirectly purchased enoxaparin "for their own use and not for resale." DE 143 at ¶¶ 82-83. Defendants note that Plaintiff identified itself in the original complaint as an entity that buys enoxaparin and "dispenses the drugs to hospital patients or re-sells them through the NGH pharmacy." DE 1 at ¶ 11. However, even if the Court chose to hold Plaintiff to its original complaint, that initial definition does not definitively—and especially not at this stage of this proceeding—exclude Plaintiff from seeking damages based on its dispersal of enoxaparin to patients at NGH, sometimes at its own cost (DE 143 at ¶ 11), separate from its resale of enoxaparin through its pharmacy. Regardless, such parsing of definitions is not appropriate at this stage of litigation in light of the liberal pleading standard set forth by Rule 15. *See Broughton v. St. John Health Sys.*, 246 F. Supp. 2d 764, 775 (E.D. Mich. 2003) ("Granting leave

---

[16] Notably, counsel for the plaintiffs failed to even appear for oral arguments on the motion for leave to amend the complaint. *Pierre*, 2006 WL 407553, at *1.

freely under Rule 15 'reinforce[s] the principle that cases should be tried on their merits rather than the technicalities of pleadings.'") (quoting *Tefft*, 689 F.2d at 639).

Defendants' argument with respect to DC 37 is similarly unpersuasive. Defendants employ semantic dexterity to contend that DC 37 does not fit within the proposed class definition because DC 37, as a health and welfare benefit plan, does not "use" enoxaparin as described in the proposed class definition. DE 148 at 28. Yet the amended complaint defines DC 37 as an entity that "indirectly purchased, paid, and reimbursed for Lovenox® and/or generic enoxaparin intended for consumption by its members, retirees, and their families[.]" DE 143 at ¶ 12. The proposed class definition with respect to indirect purchasers includes "[a]ll persons and entities that ... indirectly purchased ... for their own use and not for resale Lovenox® or generic enoxaparin." *Id.* at ¶ 83. This appears to cover an entity that indirectly purchases the subject drugs and distributes them to its own members.

A class representative must "possess the same interest and suffer the same injury as the class members." *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989) (quoting *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S. Ct. 1891, 1896, 52 L. Ed. 2d 453 (1977)) (internal quotations omitted). The amended complaint makes clear the allegation that DC 37, as an indirect purchaser, paid overcharges for Lovenox® and enoxaparin as a result of Defendants' monopolization efforts. *See* DE 143 at ¶¶ 3, 81, 119. The fact that DC 37 did not physically ingest these drugs, which appears to be the primary component of Defendants' argument, does not negate DC 37's involvement in indirectly purchasing them for subsequent use by their members. The Court also finds support for its determination in the decision in *In re Nexium Antitrust Litigation*, cited in Plaintiff's brief (DE 153 at 20-21), in

18

which the First Circuit affirmed a district court's certification of a similarly described class with named plaintiffs who were "union health and welfare funds that reimburse plan members for prescription drugs," which consisted of "[a]ll persons or entities in the United States and its territories who purchased or paid for some or all of the purchase price for Nexium or its AB-rated generic equivalents ... for consumption by themselves, their families, or their members, employees, insureds, participants or beneficiaries[.]" 777 F.3d 9, 13-14 (1st Cir. 2015).

Defendants' additional assertion that Plaintiff's proposed class definition is untenable due to potential conflicts between putative class members is similarly unavailing. Citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004), Defendants seamlessly claim that DC 37, NGH, and consumers are "fundamentally different groups that, at a minimum, require separate counsel and representatives to ensure adequate representation." DE 148 at 28. This, however, is a shallow interpretation of the Third Circuit's ruling, which actually rejected the very argument regarding class member conflict that Defendants in the instant case have proffered:

> [W]e reject Appellants' contention that the interests of the class members were in conflict in such a way that the District Court abused its discretion in certifying a single class including several types of injured plaintiffs. As the District Court found, the named parties, who included consumers and [third party payors], as well as consumers from the indirect purchaser states, all shared the same goal of establishing the liability of DuPont, suffered the same injury resulting from the overpayment for warfarin sodium, and sought essentially the same damages by way of compensation for overpayment .... Although some courts have created subclasses of class action plaintiffs where there are conflicts of interest among class members ... we do not believe that this was required in this case. Appellants have only asserted, rather than established, an inherent conflict among consumers and between consumers and [third party payors].

*Warfarin Sodium*, 391 F.3d at 532-33. The fact that the Third Circuit viewed favorably the presence of separate counsel for the consumers and third party payors does not amount to a

mandate that such separate representation exist in every class action suit. This alone is sufficient to overcome any assertion by Defendants that Plaintiff's proposed amendment in this regard is futile. *See id*. at 533 ("Appellants have only asserted, rather than established, an inherent conflict among consumers and between consumers and [third party payors].").

Defendants further argue that NGH has abandoned its previous position as a direct purchaser and now seeks to improperly fundamentally change the nature of this case by shoehorning indirect purchaser claims into the lawsuit, thus causing undue prejudice to Defendants. DE 148 at 29-31. Defendants cite several cases in support of this position, although none support denial of a motion to amend in a case involving facts similar to those currently before the Court. *See Town of Lexington v. Pharmacia Corp.*, No. 12-cv-11645, 2015 WL 1321448, at *4 (D. Mass. Mar. 24, 2015) (denying motion to file amended complaint that changed theory of case from defendants' failure to regulate levels of polychlorinated biphenyls in schools to defendants' negligence in using contaminated caulk that allegedly caused increased levels of polychlorinated biphenyls); *Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.*, 156 F.3d 49, 51 (1st Cir. 1998) (affirming district court's denial of motion to amend complaint that was filed near the close of discovery period, which had been extended on three previous occasions, and added a new defendant); *Davis v. Lenox Hill Hosp.*, No. 03-cv-3746 DLC, 2004 WL 1926086, at *4 (S.D.N.Y. Aug. 31, 2004) (denying motion to amend that was filed after the close of class discovery); *Bissell Homecare, Inc. v. PRC Indus., Inc.*, No. 1:13-cv-1182, 2014 WL 3756131, at *16 (W.D. Mich. July 31, 2014) (finding that a motion to amend the complaint that was not filed until after the opposing party's motion to dismiss for lack of personal jurisdiction was pending, and several months "after the basis of the amendment was or should have been

known to Plaintiff based on Defendant's Answer," should be denied); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Illinois Corp.*, 113 F.R.D. 527, 531 (N.D. Ill. 1986) (denying defendant's motion to join excess insurers as counterclaim defendants under Fed. R. Civ. P. 13(h)); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming district court's denial of motion to amend complaint that sought to change action from enforcement of an Indian tribe's sovereign power under federal common law to new federal claims involving the Racketeer Influenced and Corrupt Organizations Act, criminal depredation and trespass statutes, and claims brought pursuant to 42 U.S.C. § 1985); *Mississippi Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 542-43 (D.D.C. 1991) (denying motion to amend complaint in a case brought under the Freedom of Information Act in which "the bulk of the documents" sought by the subject plaintiffs had already been provided before plaintiffs moved to add new parties and claims involving alleged civil rights violations and the Administrative Procedure Act).

In contrast, the proposed amended complaint in the instant matter continues to assert antitrust violations committed by Defendants, but now focuses on statutes from 31 jurisdictions that permit "indirect purchaser" standing, thus purportedly curing the defect contained in the original complaint that precluded Plaintiff from seeking damages pursuant to *Illinois Brick*. This is a far cry from "plung[ing] this case into chaos," as Defendant claims. DE 148 at 29. Of note, Plaintiff reports that Defendants "have propounded no affirmative discovery and no expert work has occurred." DE 153 at 19. Defendants' assertion of undue prejudice at this stage of litigation rings hollow, and the Court therefore finds no compelling reason to deny the motion to amend as either futile or unduly prejudicial based on the class certification issues.

21

**(5) Unjust Enrichment**

Defendants finally argue that Plaintiff's unjust enrichment claim is futile and thus subject to dismissal solely because the amended complaint does not specify which of the unjust enrichment laws from the various states are being invoked. DE 148 at 31. Defendants again rely on the *Packaged Ice II* decision, in which the district court dismissed the "undifferentiated unjust enrichment claims" proffered by indirect purchasers because such claims "did not identify the states under whose laws they brought their claims." 779 F. Supp. at 667-68 (citing *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 587 (M.D. Pa. 2009)).

There is support for Defendants' argument that Plaintiff's failure to identify any of the laws under which its unjust enrichment claims might proceed warrants dismissal of such claims. *See Auto. Parts*, 2013 WL 2456612, at \*31 (holding that the indirect purchaser plaintiffs' "failure to identify the unjust enrichment laws of any particular jurisdiction subjects the causes of action to dismissal"). However, given the liberal standard contained in Fed. R. Civ. P. 15(a), the Court finds that dismissal is not appropriate based on the alleged futility of the proposed unjust enrichment claim. The Court finds persuasive the course taken in the *Chocolate Confectionary* decision, which is cited favorably in *Packaged Ice II*, and in which the district court provided the subject plaintiffs an opportunity to amend their complaint to identify the laws under which their proposed unjust enrichment claims would proceed. *See Chocolate Confectionary*, 602 F. Supp. 2d at 587 (M.D. Pa. 2009) ("The ... plaintiffs will be permitted to pursue these [unjust enrichment] claims in the form of a second amended complaint provided, however, that they clearly identify the state jurisdictions invoked therein."). The Court also relies on the district court's decision in *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d

896 (N.D. Cal. 2008), another case cited favorably in both the *Packaged Ice II* opinion and Defendants' brief (DE 148 at 31-32), which similarly permitted the subject indirect purchaser plaintiffs to cure this defect. *See SRAM*, 580 F. Supp. 2d at 910 ("[T]he Court dismisses Plaintiffs' unjust enrichment claim with leave to amend. If Plaintiffs re-plead this claim, they must identify which State's or States' law they rely upon."). For all of these reasons, the Court finds that permitting Plaintiff to modify its proposed amended complaint to identify the unjust enrichment claims by state, rather than denying amendment at all, is the most consistent with Fed. R. Civ. P. 15.

### III. CONCLUSION

Based on the foregoing, Plaintiff's motion for leave to file an amended complaint (DE 140) is GRANTED, with the additional allegations described in Plaintiff's notice filed on September 15, 2017 (DE 159), and the additional modification that Plaintiff specify the state laws under which it asserts its unjust enrichment claims. Plaintiff shall file this amended complaint within seven (7) days of the date of entry of this Order. Defendant shall have 28 days after the filing of the amended complaint to answer or otherwise respond.[17]

---

[17] Although the Court previously entered an order (DE 139) allowing Defendants thirty days from entry of any order granting the motion to amend to file an answer or other response, that order did not necessarily contemplate that further modification of the amended complaint might be directed. Additionally, given that the Federal Rules of Civil Procedure generally compute time in increments of seven (7) days, the time for Defendants to respond is amended to allow for a 28-day (rather than a 30-day) response. *See also* Fed. R. Civ. P. 15(a)(3).

Any party objecting to this memorandum opinion and order may seek review by way of a "motion for review" in accordance with Local Rule 72.02(b), which must be filed within fourteen (14) days after service of this memorandum and order.

It is SO ORDERED.


_____
BARBARA D. HOLMES
United States Magistrate Judge