## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| THE HOSPITAL AUTHORTIY OF METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, d/b/a NASHVILLE GENERAL HOSPITAL and AMERICAN FEDERATION OF STATE, COUNTY AND MUNICPAL EMPLOYEES DISTRICT COUNCIL 37 HEALTH & SECURITY PLAN, | ) ) ) ) ) No. 3:15-cv-01100 ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MOMENTA PHARMACEUTICALS, INC. and SANDOZ INC., | ) ) ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on Plaintiffs' Motion for Final Approval of Settlement. (Doc. No. 511).

The Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee ("Nashville General") and American Federation of State, County and Municipal Employees District Council 37 Health and Security Plan ("DC 37") ("Plaintiffs"), on behalf of themselves and of the class certified by this Court on September 20, 2019, as amended on October 22, 2019 (the "Class") (Doc. Nos. 427 and 464), and each of defendants Momenta Pharmaceuticals, Inc. ("Momenta") and Sandoz Inc. ("Sandoz") (collectively "Defendants") have agreed—subject to Court approval following notice to the Class and a hearing—to settle the above-captioned matter (the "Action") upon the terms set forth in the Momenta Settlement (Doc. No. 486-2 at 10-42) and the Sandoz Settlement (Doc. No. 486-2 at 44-74);

On January 3, 2020, the Court ordered notice directed to the Class and scheduled a Fairness Hearing (Doc. No. 488, as modified at Doc. No. 492 on January 9, 2020). The Fairness Hearing was held on May 29, 2020.

Having reviewed and considered the two settlement agreements (the "Momenta Settlement" and the "Sandoz Settlement"), the record in this case, the briefs and the supporting exhibits and declarations, and the arguments of counsel, the Court finds and concludes as follows:

1. The Court has jurisdiction over the subject matter of the Action, and all parties to the Action.

2. All defined terms contained herein, unless otherwise defined, shall have the same meanings as set forth in the Momenta Settlement and Sandoz Settlement.

3. Under Federal Rule of Civil Procedure 23(e)(2), after a hearing, the Court finally approves the Settlements and finds the Settlements in all respects fair, reasonable, and adequate to the Class. Specifically:

    a. The class representatives and counsel have vigorously represented the interests of the Class, having prosecuted this action on behalf of the Class for more than four years. Specifically, the class representatives and counsel briefed two rounds of motions on the pleadings, two rounds of class certification motions, opposed summary judgment, reviewed millions of pages of documents, took and defended dozens of depositions, and litigated the case to the brink of trial. Counsel accomplished this within a demanding schedule that required the utmost commitment of their resources. The advocacy in this case was of the highest caliber. Counsel at all times demonstrated great knowledge about the case and high expertise in the field of antitrust.

    b. The Settlements arise out of arm's-length, informed, and non-collusive negotiations between counsel for Plaintiffs and the Defendants. Specifically, during contentious,

hard-fought litigation, the parties engaged a neutral, The Honorable Edward Infante (ret.), to conduct mediation. The parties met in person on two separate days. Following an agreement in principle on basic terms, the parties negotiated the details of the agreements for several more weeks.

        c.     The Settlements together create a non-reversionary, all-cash settlement fund of $120 million. This amounts to more than half of Plaintiffs' claimed single damages. The Court finds this is a more than adequate, indeed extraordinary result, considering: (i) the costs, risks, and delay of trial and appeal, particularly in light of the complex nature of Plaintiffs' case and the multiple potential defenses available at trial; (ii) the effectiveness and straightforwardness of the proposed claims process; (iii) the reasonableness of the request for an award of attorneys' fees and costs and service awards for the class representatives; and (iv) that the only agreements identified under Rule 23(e)(3) consist of supplemental agreements that set forth confidential terms of termination in the event exclusions reached a certain threshold (there were no exclusions), and these agreements may appropriately be kept confidential and not filed on the public docket.

        d.     This Court finds that Plaintiffs' proposed distribution plan is fair, reasonable, and adequate. The proposed plan of distribution treats class members equitably relative to each other. It divides the settlement among four categories of purchases (Retail-Brand, Retail-Generic, Non-Retail-Brand, and Non-Retail-Generic) based on each category's share of classwide damages as calculated by the Plaintiffs' expert, Dr. Russell Lamb. Eligible claimants will be paid proportionally based on net dollar value of qualifying purchases in each category.

        4.     The Settlements are also fair, reasonable, and adequate considering the factors enumerated by the Sixth Circuit: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the

likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

        a.      The Settlements were reached after years of contested litigation, including certification of the Class, and multiple mediation efforts that concluded only shortly before trial. There is no risk of fraud or collusion.

        b.      This case was extraordinarily complex and expensive, and further litigation would only be more so. Indirect purchaser class actions are complex, and Plaintiffs' claims in this case included several elements unprecedented or unusual in a class case, including an antitrust violation predicated on deception of a quasi-governmental standard-setting organization, and a theory of damages predicated on delay of a second generic entrant.

        c.      The parties engaged in full discovery, with the case ready for trial when the Settlements were reached.

        d.      The Class faced significant risk, on both liability and damages, at trial and on appeal.

        e.      The Class Representatives and Class Counsel unreservedly support the Settlements.

        f.      The reaction of absent class members weighs in favor of approval, as no class members objected.

        g.      The public interest favors settlement of complex litigation and class actions, particularly where settlement ensures effective enforcement of the antitrust laws and deterrence of anti-competitive conduct in the marketplace.

     5.     The Court has certified the Class, which is defined as follows:

Hospitals, third-party payors, and people without insurance who indirectly purchased, paid for, and/or reimbursed some or all of the purchase price for, generic enoxaparin or Lovenox®, in Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, from September 21, 2011, through September 30, 2015 (the "Class Period"), for the purpose of personal consumption by themselves, their families, or their members, employees, insureds, participants, patients, beneficiaries or anyone else.

With respect to third-party payors and people without insurance, the Class only includes those, described above, who purchased, paid for, and/or reimbursed some or all of the purchase price for, generic enoxaparin or Lovenox® from a pharmacy.

Excluded from the Class are:

a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates;

b) Federal and state governmental agencies except for cities, towns, municipalities, counties or other municipal government entities, if otherwise qualified;

c) Payors that received 100% reimbursement on all transactions, such as fully insured health plans (i.e., plans that purchased insurance covering 100% of their reimbursement obligation to members);

d) Third-party payors and people without insurance who purchased, or paid or reimbursed only for branded Lovenox®, and not generic enoxaparin, from a pharmacy or other retail outlet; and

e) Judges assigned to this case and any members of their immediate families.

6. Class Notice was accomplished as set forth in the Settlement Agreements and in the order directing notice to the Class. Notice constituted the best notice practical under the circumstances, and met the requirements of Rule 23(c)(2) and (e)(1) and due process. Hospital and third-party payor members of the Class received notice through a direct mail campaign. All class members received notice through a print and online publication campaign including millions of banner ads and paid search result placement. The Class had access to an online website that included information about the case including the deadline to object, the claim filing deadline, the date and time of the Final Approval Hearing, and Class Counsel's request for attorneys' fees and

5

costs and incentive awards. The website also provided access to the Notice and Claim Forms and the proposed Distribution Plan, and allowed Class members to submit claims online.

7.     The notice documents and website fairly, accurately, and reasonably informed members of the Class of (1) appropriate information about the nature of this litigation and the essential terms of the Settlement Agreements; (2) appropriate information about, and means for obtaining, additional information regarding this litigation and the Settlement Agreements; (3) appropriate information about, and means for obtaining and submitting, a Claim Form; (4) appropriation information about the right of members of the Class to object to the terms of the Settlement Agreement, or object to Class Counsel's request for an award of attorney fees and costs and service awards, and the procedures to do so; and (5) appropriate information about the consequences of failing to submit a Claim Form or failing to comply with the procedures and deadline for objecting to the Settlements. No Class Members objected to the Settlements.

For all of the above reasons, Plaintiffs' Motion for Final Approval of Settlements (Doc. No. 511) is **GRANTED.**

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

6